USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4- 29- 13

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

HARLAN FRANKEL,                                   :
                                                  :
                              Plaintiff,          :
                                                  :
              - against -                         :
                                                  :
NEW YORK STATE OFFICE OF CHILDREN &               :
FAMILY SERVICES, GLADYS CARRION,                  :
RICHARD TRUDEAU, POLA EISENSTEIN-ROSAN,           :
KEITH BERGMANN, MICHAEL DECELLE,                  :
BERNETT MARION, EMMILINE MURPHY, and              :
LOIS SHAPIRO,                                     :
                                                  :
                              Defendants.         :

**REPORT AND**
**RECOMMENDATION**

**11 Civ. 7973 (DAB) (RLE)**

**To the HONORABLE DEBORAH A. BATTS, U.S.D.J.:**

## I. INTRODUCTION

*Pro se* Plaintiff Harlan Frankel ("Frankel") filed this Complaint on November 3, 2011,

against the New York State Office of Children & Family Services ("OCFS"), Gladys Carrion

(Commissioner of OCFS), Richard Trudeau (former Facility Director at OCFS Pyramid

Reception Center, now retired), Pola Eisenstein-Rosan (an employee with the New York State

Office of Mental Health and Frankel's former supervisor), Keith Bergmann (a senior investigator

with the OCFS Special Investigations Unit), Michael DeCelle (a former OCFS Special

Investigations Unit employee), Bernett Marion (OCFS Acting Director of Equal Opportunity &

Diversity Development), Emmiline Murphy (Chief Diversity Officer for the New York State

Office of Mental Health), and Lois Shapiro (former OCFS Director of Behavioral Services, now

retired) (collectively, the "Defendants").  Frankel, a former OCFS employee, brings this action

under 42 U.S.C. § 1983 for purported retaliation in violation of the First Amendment to the

United States Constitution, and Article 1, § 8 of the New York State Constitution. (Compl. ¶ 77.) He also claims that his rights were violated under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and Article 1, § 6 of the New York State Constitution. (*Id.* at ¶ 84.) Lastly, Frankel asserts a state common law claim for intentional infliction of emotional distress. (*Id.* at ¶ 91.) He seeks reinstatement at OCFS with all the privileges and seniority he held at the time he resigned, plus backpay, (*id.* at ¶ 92(b)), as well as compensatory and punitive damages, (*id.* at ¶¶ 92(d), (e).)

On March 23, 2012, Defendants filed a motion to dismiss all claims for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). On August 31, 2012, Frankel submitted a Memorandum of Law in Response to Defendants' Motion to Dismiss ("Pl. Mem.") (Doc. No. 41).[1] On October 5, 2012, Defendants filed a Memorandum of Law in Reply to Plaintiff's Response ("Defs. Mem.") (Doc. No. 44). For the reasons that follow, I recommend that Defendants' motion to dismiss (Doc. No. 21) be **GRANTED,** and that judgment be entered for Defendants. Specifically, I recommend that: 1) Frankel's federal claims against OCFS and the individual Defendants sued in their official capacities be **DISMISSED** because they are barred by the Eleventh Amendment; 2) Frankel's § 1983 claims that occurred before November 4, 2008, be **DISMISSED** because they are time-barred by the three-year statute of limitations; 3) Frankel's intentional infliction of emotional distress claim be **DISMISSED** because it is barred by New York's one-year statute of limitations; 4) Frankel's First Amendment retaliation claims be **DISMISSED** because the allegations in the Complaint do not establish that he engaged in constitutionally protected speech and was subjected to an adverse employment

---

[1] On August 31, 2012, Frankel submitted papers noting his response to Defendants' Motion to Dismiss as an "Affirmation in Opposition to Defendant's Motion to Dismiss Complaint" (Doc. No. 41). The Court reads Plaintiff's submission as Plaintiff's Response in Opposition to Defendant's Motion to Dismiss.

action as a result; 4) Frankel's due process claims be **DISMISSED** because he failed to pursue a

New York Civil Practice Law and Rules Article 78 proceeding as an adequate post-resignation

remedy; 5) Frankel's claims against Defendants Carrion and Murphy be **DISMISSED** because

he fails to allege that they were directly or personally responsible for the relevant events; and 6)

Frankel's claims against the individually named Defendants be **DISMISSED** because they are

entitled to qualified immunity.

## II. BACKGROUND

Frankel was employed as a psychologist with OCFS for over eleven years until he

resigned on November 5, 2008. (Compl. at ¶¶ 1, 61.) In January 2008, Defendant Carrion

announced plans to close the Pyramid Reception Center ("Pyramid") OCFS facility, where

Frankel worked in the Bronx, and to relocate certain services to the Ella McQueen Residential

Center in Brooklyn. (*Id.* at pp. 4-5 ("Statement of the Facts").) Between February 7 and 11,

2008, Frankel wrote two letters to members of the State legislature in support of keeping

Pyramid open. (*Id.* at ¶ 19.) Frankel asserts that the Public Employee Federation ("PEF") union

and the staff at Pyramid came to rely on his letters when they met with members of the

legislature in their campaign to keep Pyramid open. (*Id.* at ¶¶ 18, 24.) He claims that he was

acting as a public citizen exercising his First Amendment right when he submitted the two letters

to maintain Pyramid. (Pl. Mem. at ¶ 26.) Frankel argues that OCFS retaliated against him for

the submission of his letters, although no formal action or meetings occurred between Frankel

and Defendants regarding these two letters.

As part of his employment at OCFS, Frankel planned to attend a sex offender training

conference that all OCFS employees were required to attend in Saratoga Springs, New York.

(*Id.* at ¶ 21.) The conference was scheduled for two days, but Frankel planned to take a week off

by using his vacation credits. (*Id.* at ¶¶ 21-22.)  On May 9, 2008, before Frankel left for the conference, his supervisors, Defendants Trudeau and Eisenstein-Rosan, asked him why he planned to be out of the office the entire week, while a fellow OCFS employee attending the conference only planned to be out two days. (*Id.* at ¶¶ 22, 25.)  Frankel believed that Trudeau and Rosan's questions were unnecessary because his leave had been previously approved by Deputy Commissioner Burrell, but he gave them a copy of the approval. (*Id.* at ¶ 25.)  This discussion with Trudeau and Rosan caused Frankel "a lot of stress and anxiety." (*Id.*)  When he returned from the conference, Trudeau and Rosan again asked Frankel about his attendance at the conference and his absence from the office during that week. (*Id.* at ¶ 28.)  Although no formal action was taken by OCFS, Frankel "experienced many days of stress" regarding these events. (*Id.* at ¶ 30.)

On May 23, 2008, Frankel sent an email complaint to various OCFS and State Office of Medical Health employees, including Defendant Shapiro, claiming that he experienced so much stress from his encounters with Trudeau and Rosan that he had developed cardiac arrithymias and had been "outfitted with a 30 day heart monitor." (*Id.* at pp. 9, 11.)  In his email, Frankel stated that he suspected OCFS had "retaliated against [him] given the agency's history with [his] previous complaints." (*Id.* at p. 10.)  On June 5, 2008, Frankel met with Defendant Marion and another OCFS employee not named in the Complaint to discuss these issues. (*Id.* at ¶ 36.)  Marion gave him the impression that he had concerns about Frankel's issues, but gave Frankel no recommendations or orders, and did not promise that any actions would be taken by OCFS. (*Id.*)  Frankel asked for information from OCFS regarding this meeting under the Freedom of Information Law ("FOIL"),[2] but his request was denied. (*Id.*)  Frankel argues that OCFS is

---

[2] N.Y. Pub. Officers Law §§ 85-89, N.Y. Sess. Laws ch. 578, §§ 85-89 (McKinney 1974), as amended, N.Y. Sess. Laws chs. 579-80 (McKinney 1974).

withholding case-related material, and believes there exists an ongoing conspiracy to deny him

due process, including a cover-up of these events. (Pl. Mem. at ¶ 36.)

On June 17, 2008, Frankel filed a grievance with PEF regarding actions taken by Rosan

and Trudeau. (*Id.* at ¶ 37.) On June 18, he was summoned without advance notice to a meeting

about his email complaint. He did not get an opportunity to have union representation. (*Id.* at ¶

38.) Defendants Shapiro, Trudeau, and Marion accused him of sending the email complaint to

others, including Defendant Carrion. (*Id.*) They told him "that the sending of any future

complaints by [him] is not recommended" and they wanted to know if he had sent copies to

others outside of OCFS. (*Id.*) Frankel's "stress levels increased" as a result of this meeting.

(*Id.*) He requested information from OCFS regarding this meeting under FOIL, but the request

was denied. (*Id.*)

On June 23, Frankel was given notice that he would be subject to a formal

"Interrogation" on June 26 (rescheduled to July 1, 2008). (*Id.* at ¶ 39.) Trudeau refused to

explain why Frankel was subject to this action, and no one told Frankel why the Interrogation

had been requested. (*Id.*) On June 30, Frankel met with Defendant Murphy and an employee

from the Equal Employment Opportunity and Diversity Office ("EEOD") of OCFS, and they

agreed to work on a mediation agreement, but there was never any follow-up. (*Id.* at ¶ 41.)

Frankel requested information from OCFS regarding this meeting under FOIL, but his request

was denied. (*Id.*)

On July 1, 2008, with PEF representatives present, OCFS Special Investigations Unit

("SIU") staff member Bergmann interviewed Frankel about his attendance at the work

conference and an anonymous letter that circulated in the office defaming Rosan. (*Id.* at ¶¶ 30,

43.) He "immediately got the impression that someone figured" that because he had made earlier

complaints, that "this letter must have been written by [him]." (*Id.* at ¶ 43.) Frankel told

Bergmann that he had not seen the letter. (*Id.*) He requested information from OCFS regarding

this interview under FOIL, but his request was denied. (*Id.*)

On July 24, 2008, the SIU confiscated Frankel's OCFS computer to conduct a forensic

analysis of the contents. (*Id.* at ¶ 45.) Frankel asserts that his computer was seized because

Rosan had convinced Trudeau that Frankel was using his office and computer at Pyramid to run

his own mental health private practice. Rosan and Trudeau also believed that Frankel was the

author of the negative document about Rosan, and that they could find it by seizing his computer.

(*Id.* at ¶ 46.) Because of the "overwhelming" stress Frankel experienced, he took the rest of the

day off. (*Id.*) Trudeau "proceeded to lecture [him]" about the proper way to request time off.

(*Id.*) Because he lacked any explanation for the series of events on July 24, 2008, his "sleep as

well as his physical and emotional well-being" were negatively impacted. (*Id.*) Frankel asked

for information from OCFS regarding the July 24, 2008 meeting under FOIL, but his request was

denied. On July 30, Frankel was prescribed anti-anxiety medication by his doctor. (*Id.* at ¶ 47.)

On July 31, Frankel was given a replacement computer but despite his request, the case files on

the computer that he needed to complete his mental health evaluations were not provided. (*Id.* at

¶¶ 46-49.)

In October 2008, Rosan approached Frankel about inconsistencies between two different

time monitoring systems, a daily sign-in book, and a "key log," which reflects the time an

employee enters the Pyramid facility and exchanges his personal keys for the facility keys. (*Id.*

at ¶ 54.) Rosan asked Frankel to edit his timesheet to reflect the time recorded in the key log.

(*Id.*) Frankel alleges that Rosan harassed and retaliated against him after Rosan considered

Frankel's revisions to be incomplete and asked him to round each time entry to the nearest

quarter hour. (*Id.* at ¶¶ 54-55.) On November 4, Frankel emailed "various PEF union officials," but none of the Defendants, to complain that Rosan and Trudeau's actions impacted his health by causing emotional distress. (*Id.* at ¶ 60.) In the summer of 2010, Frankel's request for copies of time sheets from OCFS under FOIL was denied. (*Id.* at ¶ 57.)

On November 5, 2008, Bergmann, Trudeau, and DeCelle (another SIU staff member) interviewed Frankel about evidence of inappropriate and illegal activities ("searching the web for boys, having porno that could be child porn, going to MySpace") found on his old OCFS computer. (*Id.* at p. 24.) At the interview, Frankel had no prior notice, and was not informed that he had the right to union representation or legal counsel. (*Id.* at ¶ 61.) He asserts that he utilized MySpace to verify if residents in custody had inappropriate information on the website, which he notes in their Psychological Reports. (*Id.* at p. 25.) Bergmann showed Frankel two pages of inappropriate photos taken from Frankel's computer, one of which Frankel "recognized" as a "female, non-nude model over age 21." (*Id.*) Bergmann stated that SIU had found photos that could constitute child pornography and evidence that Frankel searched the web for "15-year-old males." (*Id.* at p. 25.) Bergmann informed Frankel that he could not continue to work at OCFS but could continue working at other state agencies. (*Id.* at pp. 25, 28.) Frankel persistently denied the allegations. (*Id.* at p. 26.) Bergmann asked Frankel to resign or OCFS would file charges to have Frankel's license revoked. (*Id.* at p. 28.) Frankel signed a resignation form "under duress," which he claims constituted constructive discharge. (*Id.* at pp. 2, 30.) Frankel made a FOIL request for documents relating to the events that transpired on the date of his resignation, but the request was denied. (*Id.* at p. 31.)

7

## III. DISCUSSION

### A. Standard for Dismissal Under 12(b)(1)

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a complaint may be dismissed when the federal court "lacks jurisdiction over the subject matter." *See* Fed. R. Civ. P. 12(b)(1). In most cases, the court will consider a 12(b)(1) motion before ruling on any other motions to dismiss, since dismissal of an action for lack of subject matter jurisdiction will render all other accompanying defenses and motions moot. *See United States ex rel Kreindler & Kreindler v. United Technologies Corp.*, 985 F.2d 1148, 1155-56 (2d Cir. 1993), *cert. denied sub nom. Kreindler & Kreindler v. United Technologies Corp.*, 508 U.S. 973 (1993); *see also Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990). Thus, a court confronted with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) should decide the jurisdictional question first because "a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." *Magee v. Nassau Cnty. Medical Center*, 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998); *see also Rhulen*, 896 F.2d at 678.

In considering a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court must assume as true factual allegations in the complaint. *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) (*citing Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *Serrano v. 900 5th Ave. Corp.*, 4 F. Supp. 2d 315, 316 (S.D.N.Y. 1998). Where jurisdictional issues are in dispute, the court may look to "evidence outside the pleadings, such as affidavits." *Filetech S.A. v. France Telecom, S.A.*, 157 F.3d 922, 932 (2d Cir. 1998) (*quoting Antares Aircraft v. Fed. Republic of Nigeria*, 948 F.2d 90, 96 (2d Cir. 1991), *vacated on other grounds*, 505 U.S. 1215 (1992)).

8

1. **Frankel's Federal Claims Against OCFS and Individual Defendants Are Barred by the Eleventh Amendment to the U.S. Constitution**

   a. **Frankel's Claims Under Section 1983 Against OCFS**

To prevail in a § 1983 action, a plaintiff must prove: 1) that the challenged practices are attributable, at least in part, to a person acting under color of state law; and 2) that the challenged practices deprive the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Wimmer v. Suffolk Cnty. Police Dep't*, 176 F.3d 125, 136-37 (2d Cir. 1999). Congress did not abrogate the States' Eleventh Amendment immunity in enacting § 1983. *Quern v. Jordan*, 440 U.S. 332, 341-42 (1979). Moreover, a state is not a "person" for purposes of § 1983, and neither a state nor a state agency can be sued under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1981); *see, e.g., Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004) (§ 1983 claim barred because the DMV is a state agency).

OCFS is a state agency, and Frankel has cited no authority that OCFS waived its immunity under the Eleventh Amendment for claims pursuant to § 1983. Frankel's bare assertion that sovereign immunity should not apply in this case is insufficient as a matter of law to allow his claims to survive dismissal under Rule 12(b)(1).

   b. **Frankel's Claims Under Section 1983 Against the Individual Defendants**

Because the Eleventh Amendment bars a § 1983 claim against a state, it also bars the action against a state employee sued in his official capacity. *Berman Enter., Inc. v. Jorling*, 3 F.3d 602, 606 (2d Cir. 1993) ("a suit against a state official in his official capacity is, in effect, a suit against the state itself"). As such, each of Frankel's § 1983 claims against individual Defendants in their official capacities are barred under the Eleventh Amendment and must be dismissed pursuant to Rule 12(b)(1).

### 2.  An Article 78 Proceeding is the Proper Forum to Adjudicate an Alleged Deprivation of Due Process

The federal court is a tribunal of limited jurisdiction. *Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54, 58 (2d Cir. 1985) (section 1983 . . . does not guarantee a person the right to bring a federal suit for denial of due process in every proceeding in which he is denied a license).  A due process claim for the deprivation of a property interest is not cognizable in a federal district court if state courts provide a remedy for the deprivation of that property interest. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Marino v. Ameruso*, 837 F.2d 25, 47 (2d Cir. 1988)).  New York State courts provide such a remedy through Article 78 proceedings.  N.Y. C.P.L.R. §§ 7801, 7803 (McKinney 2008).  An Article 78 proceeding "provides the mechanism for challenging a specific decision of a state [or municipal] administrative agency." *Campo v. N.Y. City Employees' Ret. Sys.*, 843 F.2d 96, 101 (2d Cir. 1988)) (alteration in original).  The proceeding "permits a petitioner to submit affidavits and other written evidence; and where a material issue of fact is raised, have a trial of the disputed issue, including constitutional claims." *Locurto v. Safir*, 264 F.3d 154, 174 (2d Cir. 2001).

Here, Frankel cannot claim that he was deprived of due process since he did not allege that he had availed himself of available state remedies. *Gabris v. TLC*, 2005 U.S. Dist. Lexis 23391, at *9 (S.D.N.Y. Oct. 6, 2005).  Frankel asserts, however, that filing a New York Civil Practice Law and Rules Article 78 proceeding was not "appropriate" because he was seeking a pre-deprivation hearing for the November 5 events comprising his due process claim – not a post-deprivation remedy. (*See* Pl. Mem. at ¶ 89). His position is meritless.  "Due process requires only that a hearing be held at a *meaningful time* and in a meaningful manner. *Giglio v. Dunn*, 732 F.2d 1133, 1135 (2d Cir. 1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 540 (1981) (emphasis added)).  Where a pre-deprivation hearing is impractical and a post-deprivation

hearing is meaningful, the State satisfies its constitutional obligations by providing the latter. *Id.*
As an alleged coerced resignation does not involve a showing of cause, but rather, the
submission by an employee to pressure exerted by a superior, "the only possible dispute is
whether the resignation was voluntary or involuntary, and this cannot be determined in advance."
*Id.* Under these circumstances, Frankel was not entitled to a pre-deprivation hearing.

"An Article 78 proceeding… constitutes a wholly adequate post-deprivation hearing for
due process purposes." *Spinelli v. City of N.Y.*, 579 F.3d 160, 170 (2d Cir. 2009) (*citing
Catanzaro v. Weiden*, 188 F.3d 56, 61 (2d Cir. 1999)); *Campo v. N.Y. City Employees' Ret. Sys.*,
843 F.2d 96, 101-02 (2d Cir. 1988) (dismissing procedural due process claim based on the
availability of Article 78 review of administrative determination); *Nnebe v. Daus*, 665 F. Supp.
2d 311, 330 (S.D.N.Y. 2009). Assuming that an Article 78 hearing had been held, "the court,
with all the facts before it, could have determined whether [Frankel's] resignation was coerced
and, avoiding the constitutional thicket, could have ordered such reinstatement and monetary
relief as was appropriate." *Giglio*, 732 F.2d at 1135. Additionally, Frankel cannot claim that an
Article 78 proceeding is no longer available because he has missed the four-month limitations
period. Due process is satisfied if he had the opportunity to challenge the adverse action. *Giglio*,
732 F.2d at 1135. Because Frankel failed to commence an Article 78 proceeding, his due
process claims are not cognizable, and I recommend that such claims be dismissed pursuant to
Rule 12(b)(1).

**B. Standard for Dismissal Under 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a party may assert a motion to dismiss
for failure to state a claim on which relief can be granted. In deciding a motion to dismiss, the
court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint

as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  A court, however, is not bound to accept as true a legal conclusion couched as a factual allegation.  *Aschcroft v. Iqbal*, 555 U.S. 662, 678 (2009).  A pleading that offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id.* at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Similarly, a plaintiff may not maintain a complaint which offers "naked assertion[s]" devoid of "further factual enhancement." *Id.* (citing *Twombly*, 550 U.S. at 557).

Under *Twombly*, the court must also apply a "flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007); *see Elektra Entm't Group, Inc. v. Santangelo*, No. 06 Civ. 11520 (SCR)(MDF), 2008 WL 4452393, at *2 (S.D.N.Y. Oct 1, 2008).  A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Twombly*, 550 U.S. 544 at 556.  Only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.*

Where a plaintiff is *pro se*, the court should apply "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Moreover, in deciding a motion to dismiss involving a *pro se* plaintiff, the court can look beyond the "four corners of the complaint" to all the pleadings before the court, including the plaintiff's opposition papers. *Mayo v. Federal Government*, No. 11 Civ. 2828, 2012 WL 4474589, at 5* (S.D.N.Y. Sept. 28, 2012); *Gonzalez v. Allied Barton Securities Servs.*, No. 8 Civ. 9291, 2010 WL 428058, at 3* (S.D.N.Y. Feb. 2, 2010).

12

1. **Frankel's § 1983 Claims are Time Barred**

   a. **The Three-Year Statute of Limitations Under § 1983**

For claims arising under § 1983 in New York, a three-year statute of limitations applies. *See Rodriguez v. City of New York*, No. 10 Civ. 4404, 2012 WL 234380, at *3 (S.D.N.Y. Jan. 24, 2012) (citing *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004)). Frankel commenced this action on November 4, 2011. Therefore, he may seek relief for events occurring on or after November 4, 2008. Except for his resignation on November 5, 2008, none of the events which form the basis of Frankel's complaint occurred within the relevant timeframe. Frankel nevertheless argues that the continuing violation doctrine applies, and events leading up to his resignation must be viewed cumulatively, so that the date of the cause of action first accrued on November 5, 2008, the last day the last component act occurred. (Pl. Mem. at ¶ 87.) Frankel notes that the ongoing nature of the actions by OCFS, such as its continuous refusal to provide documents under FOIL, defeats the statutory bar. (Pl. Mem. at ¶ 26; Ex. 5.) He also asserts that actions of OCFS in denying his multiple FOIL requests constitute a conspiracy to deprive him of his due process rights. *Id.* at ¶ 26. Neither argument has merit. As for the assertion that the FOIL denials serve to revive claims that would have otherwise expired, the continuing violation doctrine does not apply to "discrete discriminatory acts" which are not actionable if time-barred, even when related to acts alleged in timely claims, regardless of their ongoing effect on an employee. *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 110, 113-15 (2002). "When…a plaintiff's allegations of discrimination extend beyond [the statute of limitations], the nature of the claim determines what consideration will be given to the earlier conduct [outside of the statute of limitations period]." *Petrosino v. Bell Atl.*, 385 F.3d 210, 220 (2004). Frankel cannot show that his claims come within this limited doctrine, and each of the

alleged instances of discrete retaliatory action prior to November 4, 2008, is time-barred. With respect to any claimed conspiracy and the FOIL requests, Frankel offers nothing more than speculation.

### b. The One Year Statute of Limitations for Frankel's Intentional Infliction of Emotional Distress Claim

Frankel's claim for intentional infliction of emotional distress is time-barred and must be dismissed. It is well-established under New York law that a claim of intentional infliction of emotional distress has a one-year statute of limitations. *See Tovar v. KLM Royal Dutch Airlines,* 2000 WL 1273841, at *2 (S.D.N.Y. Sept. 6, 2000); *Stordeur v. Computer Associates Int'l, Inc.,* 995 F. Supp. 94, 98 (E.D.N.Y.1998); *Brown v. Bronx Cross Cnty. Medical Group,* 834 F. Supp. 105, 110 (S.D.N.Y.1993). Here, Frankel alleges that Defendants engaged in conduct that caused him "severe emotion distress" beginning in May 2008 through the date of his resignation on November 5, 2008. (Compl at ¶¶ 25-63.) As Frankel commenced this suit on November 4, 2011, however, each alleged incident of conduct by Defendants occurred beyond the one-year statute of limitations.

In addition, in order to state a claim for intentional infliction of emotional distress, a plaintiff must plead: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Stuto v. Fleishman,* 164 F.3d 820, 827 (2d Cir.1999). Extreme and outrageous conduct is understood as conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* Some of Frankel's complaints in support of this claim are that his supervisors questioned him about his time away from the office, his supervisors told him on November 5 that if he did not

14

resign, the "consequences could be serious and life-long," and that he felt like a "common criminal" when he was escorted to his office by two investigators to retrieve his belongings. (Compl. at ¶¶ 39, 61, 63.) As these incidents do not indicate that Frankel was publicly humiliated, physically threatened, or verbally abused in any manner, *Conboy v. AT&T Corp.*, 241 F.3d 242, 258-59 (2d Cir. 2001), they fail to rise to the level of "extreme and outrageous conduct" New York courts require, *see, e.g., Stuto*, 164 F.3d at 828 (noting that in *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293 (1983), plaintiff's complaint that he was publicly escorted from his work building fell short of the strict standard for outrageous conduct).

Additionally, extreme and outrageous conduct must be "intentionally directed at plaintiff and lack any reasonable justification." *Jones v. Trump*, 971 F. Supp. 783, 787 (S.D.N.Y. 1997). Frankel presents no facts showing that the conduct he complains of was especially calculated to cause serious mental distress or that the conduct lacked any reasonable justification. For instance, Frankel notes a June 25, 2008 incident where he emailed Shapiro to explain that he "expect[ed] to be terminated" after he received a letter informing him of a July 1 "interrogation." Frankel notes that Shapiro responded with, "Harlan, No one has told me you're being terminated. Try to calm down. It will be okay. Just take care of the kids, and don't catstrophize [sic]. Please take care of yourself as well." (Compl. at ¶ 40.) In response, Frankel writes back, "PS. I always take care of the kids, that u don't have to worry about." (*Id.*) In another incident, Frankel explains that Trudeau informed him on July 24 that he had to remain in the administrative area in the office while the SIU removed his computer from his office. (*Id.* at ¶ 45.) Frankel perceived this instruction as him "being held in the administration area against his will," and became "extremely depressed." These incidents fail to demonstrate conduct likely to cause serious mental distress or that there were no reasonable bases upon which Defendants took

certain actions. *See, e.g., Three Crown Ltd. Partnership v. Caxton Corp.*, 817 F. Supp. 1033, 1048-49 (S.D.N.Y. 1993) (noting that fraudulent purchase and sale of securities is calculated to cause profits for the manipulators as opposed to emotional distress for particular individuals). Indeed, certain incidents Frankel cites as having caused him distress do not demonstrate that there was any other intent by Defendants other than to communicate policy. Because there is a complet absence of factual content to support Frankel's claim, I recommend that Frankel's cause of action for intentional infliction of emotional distress be **DISMISSED**.

> **2.     Frankel's First Amendment Retaliation Claim Does Not Demonstrate Protected Speech**

Even if Frankel's First Amendment claim under § 1983 were not time-barred, the instances of speech are not protected under the First Amendment.  To survive a motion to dismiss on a First Amendment retaliation claim, a plaintiff must allege that: "(1) the speech at issue was made as a citizen on matters of public concern rather than as an employee on matters of personal interest (2) he suffered an adverse employment action, …and (3) the speech was at least a substantial or motivating factor in the [adverse employment action]." *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006). "[I]f an employee has raised an issue solely in order to further his own employment interest, his First Amendment right to comment on that issue is entitled to little weight." *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1058 (2d Cir.), *cert. denied*, 510 U.S. 865 (1993).  Thus, "retaliation against the airing of personal grievances is not brought within the protection of the First Amendment by the mere fact that one or two of [a public employee's] comments could be construed broadly to implicate matters of public concern." *Ruotolo v. City of N.Y.* 514 F.3d 184, 190 (2d Cir. 2008).

Frankel alleges that when he complained about Rosan and Trudeau to OCFS staff members and later to PEF, this constituted protected speech, which led to retaliation.  Frankel's

16

complaints about Rosan and Trudeau, however, convey that he was not speaking as a citizen on a matter of public concern, but instead describing internal grievances with his supervisors. *See Lewis v. Cowen*, 165 F.3d 154, 164 (2d Cir. 1999), *cert. denied*, 528 U.S. 823 (1999). As such, Frankel wrote the documents not as a private citizen, but as an employee to protect his own self-interest. *See Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

Frankel also claims that in his two letters to the members of the State legislature, he wrote that Pyramid provided much needed services to the Bronx community, and relocation of this facility would place the general health of residents at risk because of less than ideal facilities at Ella McQueen (no gym or recreation room for residents). (Compl. at 5.) In speaking out against the closing of Pyramid, Frankel concedes that "for current employees of Pyramid to move to Brooklyn would be devastating, and [would] take its toll on the financial and emotional well-being of the employees." (Pl. Mem. at Ex. 38). Frankel stated that "the additional financial burden on employees driving from north of New York City [to Brooklyn] will be in the range of $2500 to $3500 a year…" *Id.* Although Frankel claimed that the new location might be less than ideal because there was no gym or recreation room for residents (Compl. at 5), taking into account the "content, form, and context of [his] statement, as revealed by the whole record," *Connick v. Myers,* 461 U.S. 138, 147-48, (1983) (internal quotation mark omitted), he was primarily motivated by a personal interest in maintaining his job at Pyramid and not motivated by a desire to "advance a public purpose." *See Ruotolo v. City of New York,* 514 F.3d 184, 189 (2d Cir. 2008). In writing the two letters in support of keeping Pyramid open, Frankel spoke neither as a private citizen nor on matters of public concern, and these incidents of speech are not protected by the First Amendment.

17

In addition, assuming Frankel's speech were protected by the First Amendment, he fails to show how his speech was at least a substantial or motivating factor in the adverse employment action. *See Zelnik*, 464 F.3d at 225. Frankel concedes that Rosan and Trudeau began questioning him about his attendance before he complained via email on May 23, 2008 (Compl. at ¶¶ 25-37). He states that as a result of the stress he felt from their questioning, he wrote the email complaint, which was sent to various employees at OCFS, including Shapiro. (*Id.* at ¶ 30.) Even if these administrators expressed verbal disapproval of Frankel's conduct in this conversation, which did not carry formal discipline, it is not an adverse employment action. *Malgieri v. Ehrennberg*, No. 12 Civ. 2517, 2012 WL 6647515, at *6 (S.D.N.Y. Dec. 21, 2012) (*quoting Campanella v. Cnty. Of Monroe*, 853 F. Supp. 2d 225, 233-34 n. 6 (W.D.N.Y. 2012)).

Frankel also cites the two letters he sent in support of keeping Pyramid open to members of the State Legislature in February 2008. (Compl. at ¶ 19.) He claims that he was forced to resign on November 5, 2008. (*Id.* at ¶ 63.) He relies on the "temporal" proximity between his purportedly protected speech and subsequent adverse employment actions. (Pl. Mem. at ¶ 70.) While there is no bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship, *Gorman–Bakos v. Cornell Coop. Extension,* 252 F.3d 545, 554 (2d Cir. 2001), a district court must exercise its judgment about permissible inferences that can be drawn from temporal proximity in the context of a particular case. *Espinal v. Goord,* 558 F.3d 119, 129 (2d Cir. 2009).   Without other evidence tending to show causation, *see Hayes v. Kerik,* 414 F. Supp. 2d 193, 206 (E.D.N.Y. 2006), the date of the email complaint (May 23, 2008) and the dates of the two letters (February 7-11, 2008) are too attenuated from the date of resignation (November 5, 2008), *see Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001) (noting that two events must be "very close," and that a proximity of three months or

18

more is insufficient); *Dixon v. Int'l Fed'n of Accountants*, 416 Fed. Appx. 107, (2d Cir. 2011)

(holding that a four-month temporal proximity between employee's complaints of discrimination

and her termination was insufficient, without more, to suggest that employer's reason was

pretextual).  Therefore, the Court does not find that the alleged incidents of free speech and the

alleged adverse action to be within sufficient temporal proximity to support an inference of

causal connection.

Even if the Court were to assume that both incidents of the alleged speech (the email

complaint and two letters) were protected and that OCFS was responsible for Frankel's

resignation, this case alleges only minor and infrequent incidents that would not suffice to tie

Frankel's resignation to his earlier speech.  Petty slights or minor annoyances that often take

place at work and that all employees experience do not constitute actionable retaliation.  *Hicks v.

Baines,* 593 F.3d 159, 165 (2d. Cir. 2010) (quoting *Burlington Northern & Santa Fe Ry. Co. v.

White,* 48 U.S. 53, 68 (2006).

### 3.    Frankel's Claims against Defendants Carrion and Murphy Lack Any Basis

Frankel claims that Carrion and Murphy should be held vicariously liable for the alleged

wrongs of other subordinate Defendants.  (Pl. Mem. at ¶¶ 36, 41, 70.)  Claims alleging vicarious

liability, however, cannot be brought under § 1983.  *See, e.g., Taylor v. Keen*, No. 11 Civ. 5221,

2012 WL 3835383, at *4 (E.D.N.Y. Sept. 5, 2012).  A supervisor can only be held liable for the

wrongful action of her subordinate under the limited doctrine of supervisory liability.  *Id.*  To

make a claim for supervisory liability, a plaintiff must demonstrate that the supervisor was

personally involved through: "(1) actual direct participation in the constitutional violation, (2)

failure to remedy a wrong after being informed through a report or appeal, (3) creation of a

policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing

such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).

Frankel claims that "Carrion ... is responsible for all actions by all departments within OCFS." (Pl. Mem. at ¶ 36.) He further alleges that Carrion must have known about the alleged wrongs he endured. *Id.* at ¶ 70. Frankel fails to cite any facts which indicate that Carrion knew anything about these alleged events, nor does he allege that Carrion had any personal involvement. In addition, with regard to Murphy, Frankel claims only that on May 23, 2008, when he emailed several staff at OCFS to complain about Rosan and Trudeau, Commissioner Ines Nieves responded in an email saying, "I will pass your concerns on to Director of EODD Emy Muphy." (Compl. at ¶31.) Murphy was also copied on an email from Marion to Frankel on June 5, 2008. (*Id.* at ¶ 35.) These minimal references fail to demonstrate that Murphy was directly or personally involved in the alleged retaliation or forced resignation. The claims against Carrion and Murphy cannot meet the threshold pleading standard, and should be dismissed in their entirety.

### 4. Defendants are Entitled to Qualified Immunity in Their Individual Capacities

Qualified immunity shields public officials from liability for their discretionary acts "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Saucier v. Katz*, 533 U.S. 194, 200-202 (2001); *Poe v. Leonard*, 282 F.3d 123, 131 (2d Cir. 2002). In determining whether qualified immunity applies, "the first inquiry must be whether a constitutional right would have been violated on the facts alleged." *Saucier,* 533 U.S. at 200. If there is a violation, the Court must proceed to determine whether the right in question

20

was "clearly established" at the time of the violation. *Id.* at 201. In this regard, the right must be established with a level of specificity that is beyond the statement of a general proposition. *Id.* at 201-02; *Poe v. Leonard*, 282 F.3d at 135. In essence, the court must inquire "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202. This test does not require a defendant to have understood the complexities of the case law. *Young v. Cnty. of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998). On the other hand, "[q]ualified immunity does not protect those who are plainly incompetent or those who knowingly violate the law." *Weyant v. Okst*, 101 F.3d 845, 858 (2d Cir. 1996).

In the instant case, Frankel has not alleged facts which would constitute a constitutional violation. Further, because Frankel's internal grievances about Rosan and Trudeau are not protected under the First Amendment, no constitutional right could have been clearly established when he alleges adverse employment actions were taken against him. Frankel has failed to present facts to defeat the qualified immunity defense because no constitutional rights were clearly established at the time and the alleged actions of each individual Defendant were objectively reasonable. As a result, each Defendant sued in his or her individual capacity remains protected by qualified immunity and is not liable for money damages.

## V. CONCLUSION

For the foregoing reasons, I recommend that Defendants' Motion to Dismiss be **GRANTED**, and that Frankel's Complaint be **DISMISSED**.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Deborah

A. Batts, 500 Pearl Street, Room 2510, and to the chambers of the undersigned, 500 Pearl Street, Room 1970.  Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); FED. R. CIV. P. 72, 6(a), 6(d).

**Dated: April 29, 2013**
**New York, New York**

Respectfully Submitted,

The Honorable Ronald L. Ellis
United States Magistrate Judge

**Copies of this Report and Recommendation were sent to:**

*Pro Se* Plaintiff
Harlan Frankel
12-13 Granada Crescent
White Plains, New York 10603

Counsel for Defendants
Eric T. Schneiderman
Attorney General of the State of New York
Bonita S. Gutierrez
Assistant Attorney General
120 Broadway, New York, New York 10271